# EXHIBIT 6




June 17, 2016

FLORIDA DEPARTMENT OF STATE
Division of Corporations

TRANSFER TRUST, LLC
625 N. FLAGLER DRIVE, STE 605
WEST PALM BEACH, FL  33401

The Articles of Organization for TRANSFER TRUST, LLC were filed on June 16, 2016, and assigned document number L16000114980. Please refer to this number whenever corresponding with this office.

This document was electronically received and filed under FAX audit number H16000147472.

To maintain "active" status with the Division of Corporations, an annual report must be filed yearly between January 1st and May 1st beginning in the year following the file date or effective date indicated above. If the annual report is not filed by May 1st, a $400 late fee will be added. It is your responsibility to remember to file your annual report in a timely manner.

A Federal Employer Identification Number (FEI/EIN) will be required when this report is filed. Apply today with the IRS online at:

https://sa.www4.irs.gov/modiein/individual/index.jsp.

Please be aware if the limited liability company address changes, it is the responsibility of the limited liability company to notify this office.

Should you have any questions regarding this matter, please contact this office at the address given below.

Neysa Culligan
Regulatory Specialist II
New Filing Section
Division of Corporations           Letter Number:  216A00012751

P.O BOX 6327 – Tallahassee, Florida 32314

MVK 000439

## ARTICLES OF ORGANIZATION
## OF
## Transfer Trust, LLC

The undersigned hereby forms and establishes a limited liability company under the laws of the State of Florida.

### ARTICLE I

The name of this limited liability company is Transfer Trust, LLC ("Company").

### ARTICLE II

This limited liability company shall have perpetual existence from the date of filing these Articles with the Department of State unless sooner terminated by law.

### ARTICLE III

The mailing address and street address of the principal place of business of the Company is 625 N. Flagler Drive, Suite 605, West Palm Beach, Florida 33401. The Company may at its discretion, at any time, change the address of its principal place of business.

### ARTICLE IV

The name and street address of the initial registered agent of this Company are as follows: Martin V. Katz, Esq., 625 N. Flagler Drive, Suite 605, West Palm Beach, Florida 33401.

I have hereunto subscribed my name this 16th day of June, 2016.

        Transfer Trust, LLC
        a Florida limited liability company

        /s/ Martin V. Katz
        Martin V. Katz, Manager

I am familiar with and hereby acknowledge and accept the obligations of the Registered Agent for Transfer Trust, LLC.

        /s/ Martin V. Katz
        MARTIN V. KATZ
        Registered Agent

# OPERATING AGREEMENT
## of Transfer Trust, LLC
### (A Florida Limited Liability Company)

THIS OPERATING AGREEMENT (the "Operating Agreement") is entered into by the undersigned (the "Member"), effective as of the 17th day of June, 2016.

## RECITAL

The Member desires to form Transfer Trust, LLC, a limited liability company (the "Company"), under the Florida Limited Liability Company Act for the purposes set forth herein, and, accordingly, desires to enter into this Operating Agreement in order to set forth the terms and conditions of the business and affairs of the Company and to determine the rights and obligations of its Member.

NOW, THEREFORE, the Member, intending to be legally bound by this Operating Agreement, hereby agrees that the limited liability company operating agreement of the Company shall be as follows:

## ARTICLE I
## DEFINITIONS

When used in this Operating Agreement, the following terms shall have the meanings set forth below.

1.1     "Act" means the Florida Revised Limited Liability Company Act, as may be amended, from time-to-time, Chapter 605, Florida Statutes (or the corresponding provision(s) of any succeeding law).

1.2     "Capital Contribution(s)" means the amount of cash and the agreed value of property, services rendered, or a promissory note or other obligation to contribute cash or property or to perform services contributed by the Member for such Member's interest in the Company, equal to the sum of the Member's initial Capital Contributions plus the Member's additional Capital Contributions, if any, made pursuant to Sections 4.1 and 4.2, respectively.

1.3     "Code" means the Internal Revenue Code of 1986 and the regulations promulgated thereunder, as amended from time to time (or any corresponding provision or provisions of succeeding law).

1.4     "Member" means the undersigned or the assignee or transferee of the Member pursuant to this Operating Agreement.

MVK 000441

1.5     "Person" means any individual, partnership, firm, corporation, limited liability company, joint-stock company, trust or other entity.

## ARTICLE II
## FORMATION

2.1     Organization. The Member hereby organizes the Company as a single-member Florida limited liability company pursuant to the provisions of the Act.

2.2     Effective Date. The Company shall come into being on, and this Operating Agreement shall take effect from, the date the Articles of Organization of the Company are filed with the Florida Department of State.

2.3     Operating Agreement; Invalid Provisions. The Member, by executing this Operating Agreement, hereby agrees to the terms and conditions of this Operating Agreement, as they may from time to time be amended. To the extent any provision of this Operating Agreement is prohibited or ineffective under the Act, this Operating Agreement shall be deemed to be amended to the least extent necessary in order to make this Operating Agreement effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to validate any provision of this Operating Agreement that was formerly invalid, such provision shall be considered to be valid from the effective date of such amendment or interpretation.

## ARTICLE III
## PURPOSE; NATURE OF BUSINESS

3.1     Purpose; Nature of Business. The purpose of the Company shall be to engage in any lawful business that may be engaged in by a limited liability company organized under the Act, as such business activities may be determined by the Member from time to time. The Company shall have the authority to do all things necessary or convenient to accomplish its purpose and operate its business as described in this Section 3.1.

3.2     Powers. The Company shall have all powers of a limited liability company under the Act and the power to do all things necessary or convenient to accomplish its purpose and operate its business as described in Section 3.1 hereof.

## ARTICLE IV
## MEMBER AND CAPITAL

4.1     Member and Initial Capital Contribution. The name, address and value of the initial Capital Contribution of the Member shall be set forth on Schedule A attached hereto.

MVK 000442

4.2   Additional Capital Contributions. The Member shall have no obligation to make any additional Capital Contributions to the Company. The Member may make additional Capital Contributions to the Company as the Member determines are necessary, appropriate or desirable.

## ARTICLE V
## DISTRIBUTIONS AND ALLOCATIONS

5.1   Distributions and Allocations. All distributions of cash or other assets of the Company shall be made and paid to the Member at such time and in such amounts as the Member may determine. All items of income, gain, loss, deduction and credit shall be allocated to the Member.

## ARTICLE VI
## TAXATION

6.1   Income Tax Reporting. The Member is aware of the income tax consequences of the allocations made by Article V hereof and hereby agrees to be bound by the provisions of Article V hereof in reporting the Member's share of Company income and loss for federal and state income tax purposes.

6.2   Disregarded as an Entity. Notwithstanding anything contained herein to the contrary, pursuant to Regulation 301.7701-3(b) under the Code, the Company shall be disregarded as an entity separate from the Member for federal and state income tax purposes unless and until the Member causes the Company to file an election pursuant to Regulation 301.7701-3(c) under the Code.

## ARTICLE VII
## RIGHTS, POWER AND AUTHORITY OF THE MEMBER

7.1   Management by Member. Notwithstanding anything to the contrary contained herein, the Member shall have the full right, power and authority to manage the affairs of the Company and to bind the Company, to make all decisions with respect thereto and to do or cause to be done any and all acts or things deemed by the Member to be necessary, appropriate or desirable to carry out or further the business of the Company. However, the Member may designate a Manager to manage the Company

## ARTICLE VIII
## MANAGEMENT OF THE LLC

8.1   Management by Manager. The management of the Company shall be by the Manager, as provided for herein.

MVK 000443

8.2  Duties and Responsibilities of the Manager.

(a) The conduct of the Company's day-to-day business are hereby vested in the Manager, who shall have the authority to take all actions deemed necessary or desirable in order to conduct the daily operations of the Company, except as otherwise provided herein.

(b) Upon the effective date of this Operating Agreement, the Manager shall be Martin V. Katz. He shall serve until his tenure is terminated by death, resignation, disqualification, or a determination by the Member. The immediate successor to Martin V. Katz shall be appointed by the Member.

8.3  Decisions Requiring Approval of the Members. Notwithstanding the provisions of Section 8.1, the Manager shall not have the discretion, authority or power to make the decisions or take the following actions, except upon approval of the Member in each instance:

(a) The acquisition of any financing, including the approval of the amount of the financing, the security for such financing and all other terms of the financing, and the direct or indirect borrowing of money by the Company, whether secured or unsecured, the refinancing, extending or modifying in any material manner of any loan or delivering any guaranty of any loan or other obligation;

(b) The acquisition of any material asset or material property by the Company;

(c) The sale, assignment, transfer, encumbrance or other disposition of all or any portion of any material asset or material property of the Company;

(d) The assignment, transfer, pledge, compromise or release of any debts due to the Company, except upon payment in full;

(e) The decision to sell, transfer or otherwise dispose of all or substantially all of the assets of the Company;

(f) The conversion, merger or consolidation of the Company with or into another Person;

(g) The loan of any funds by the Company to any Person;

(h) The negotiation of, or the entering into, any agreement for the purchase of any material asset or material property by the Company;

(i) The decision to pursue, or not to pursue, any Business opportunity; and

MVK 000444

        (j)      The taking of any other action or making of any other decision which, under the terms of this Agreement, is required to be approved by the Member.

8.4    Third Party Reliance. Third parties dealing with the Company shall be entitled to rely conclusively upon the power and authority of the Manager as set forth herein.

8.5    Fiduciary Relationship. The Manager shall at all times act in a fiduciary capacity for the Company and shall not have any hidden or concealed earnings from any activity of the Company. The Manager shall not be liable, responsible or accountable to the Company or the Member in damages or otherwise for any acts performed, or for any failure to act, in good faith and absent negligence or malfeasance by the Manager; provided, however, that the Manager shall not be relieved of the fiduciary obligations to the Member and the Company for fraud or any unlawful act(s).

## ARTICLE IX
## DISSOLUTION AND WINDING UP

19.1    Events of Dissolution. The Company shall be dissolved upon the first to occur of (a) the written consent of the Member or (b) the entry of a decree of judicial dissolution under the Act.

## ARTICLE X
## BOOKS AND RECORDS

10.1    Books and Records. The Member shall keep, or cause to be kept, at the principal place of business of the Company true and correct books of account, in which shall be entered fully and accurately each and every transaction of the Company. The Company's taxable and fiscal years shall be the same as the taxable and fiscal years of the Member.

## ARTICLE XI
## LIMITATION OF LIABILITY; INDEMNIFICATION

11.1    Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or the management of its business or affairs under this Operating Agreement or the Act shall not be grounds for imposing personal liability on the Member for any debts, liabilities or obligations of the Company. Except as otherwise expressly required by law, the Member, in such Member's capacity as such, shall have no liability in excess of (a) the amount of such Member's net Capital Contributions, (b) such Member's share of any assets and undistributed profits of the Company, and (c) the amount of any distributions required to be returned pursuant to Section 608.428 of the Act.

MVK 000445

11.2 <u>Indemnification</u>. The Company (including any receiver or trustee of the Company) shall, to the fullest extent provided or allowed by law, indemnify, save harmless and pay all judgments and claims against the Member and each of the Member's agents, affiliates, heirs, legal representatives, successors and assigns and the Manager and each of the Manager's agents, affiliates, heirs, legal representatives, successors and assigns (each, an "Indemnified Party") from, against and in respect of any and all liability, loss, damage and expense incurred or sustained by the Indemnified Party in connection with the business of the Company or by reason of any act performed or omitted to be performed in connection with the activities of the Company or in dealing with third parties on behalf of the Company, including costs and attorneys' fees before and at trial and at all appellate levels, whether or not suit is instituted (which attorneys' fees may be paid as incurred), and any amounts expended in the settlement of any claims of liability, loss or damage, *provided* that the act or omission of the Indemnified Party does not constitute fraud or willful misconduct by such Indemnified Party. The Company shall not pay for any insurance covering liability of the Member or the Member's agents, affiliates, heirs, legal representatives, successors and assigns or of the Manager or the Manager's agents, affiliates, heirs, legal representatives, successors and assigns for actions or omissions for which indemnification is not permitted hereunder; *provided, however*, that nothing contained herein shall preclude the Company from purchasing and paying for such types of insurance, including extended coverage liability and casualty and worker's compensation, as would be customary for any Person owning, managing and/or operating comparable property and engaged in a similar business or from naming the Member and any of the Member's agents, affiliates, heirs, legal representatives, successors or assigns; the Manager and each of the Manager's agents, affiliates, heirs, legal representatives, successors and assigns; or any Indemnified Party as additional insured parties thereunder.

11.3 <u>Non-Exclusive Right</u>. The provisions of this Article XI shall be in addition to and not in limitation of any other rights of indemnification and reimbursement or limitations of liability to which an Indemnified Party may be entitled under the Act, common law, or otherwise. Notwithstanding any repeal of this Article XI or other amendment hereof, its provisions shall be binding upon the Company (subject only to the exceptions above set forth) as to any claim, loss, expense, liability, action or damage due to or arising out of matters which occur during or relate to the period prior to any such repeal or amendment of this Article XI.

## ARTICLE XII
## AMENDMENT

12.1 <u>Amendment</u>. This Operating Agreement may not be altered or modified except by the written consent of the Member.

# ARTICLE XIII
# MISCELLANEOUS

13.1    Binding Effect. This Operating Agreement shall be binding upon and inure to the benefit of the undersigned, its legal representatives, heirs, successors and assigns.

13.2    Applicable Laws. This Operating Agreement and the rights and duties of the Member hereunder shall be governed by, and interpreted and construed in accordance with, the laws of the State of Florida.

13.3    Headings. The article and section headings in this Operating Agreement are inserted as a matter of convenience and are for reference only and shall not be construed to define, limit, extend or describe the scope of this Operating Agreement or the intent of any provision.

13.4    Number and Gender. Whenever required by the context hereof, the singular shall include the plural, and vice versa and the masculine gender shall include the feminine and neuter genders, and vice versa.

This Operating Agreement has been made and executed by the Member effective as of the date first written above.

MEMBER:

/s/ Ossenmacher

MVK 000447

## SCHEDULE A

## NAME, ADDRESS AND INITIAL
## CAPITAL CONTRIBUTION OF THE MEMBER

| Name of Member | Address of Member | Value of Initial Capital Contribution of Member |
|---|---|---|
| J. Ossenmacher | 102 NE 2nd Street, #261<br>Boca Raton, FL 33432 | $100.00 |

MVK 000448