UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-80380-CANNON/REINHART

CAPITOL RECORDS, LLC, and
CAPITOL CMG, INC.

      Plaintiffs,

vs.

JULIA MELLERSKI,
JOHN MARK OSSENMACHER,
JASON JOHN OSSENMACHER,
TRANSFER TRUST, LLC, and
OWM, LLC,

      Defendants.
_____/

# REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS COMPLAINT [ECF No. 17]

Plaintiffs have an unpaid judgment against ReDigi, Inc., John Ossenmacher, and Larry Rudolph a/k/a Lawrence Rogel for $ 3,500,000. ECF No. 1-8 ¶4. Plaintiffs bring these proceedings supplementary to set aside allegedly fraudulent transfers of interests in purchase and sale contracts for real property located at 17 Golfview Road, Palm Beach, Florida ("the Property"). They have filed a five-count Complaint under the Florida Uniform Fraudulent Transfers Act (FUFTA) against three individuals and two limited liability companies. ECF No. 1 ("the Complaint").[1]

---

[1] Unless otherwise noted, the citation "¶" refers to the numbered paragraphs of the Complaint.

In short, in March 2014, The Digital Trust contracted to purchase the Property ("the 2014 Purchase Contract"). The Digital Trust had until May 2016 to close the transaction. In May 2016, The Digital Trust contracted to sell the Property ("the 2016 Sale Contract"). In June 2016, The Digital Trust assigned its rights under the 2104 Purchase Contract and the 2016 Sale Contract to a land trust ("the Transfers"). The land trust immediately flipped the Property for a profit. The profits were routed through the land trust and another LLC, ultimately being transferred to one or more of the Defendants. Plaintiffs allege that The Digital Trust was the alter ego of Defendant John Ossenmacher.[2] They also allege that the Transfers were fraudulent transfers, so the other Defendants, as subsequent transferees, are liable to Plaintiffs for the amount of the profits.

The individual Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failing to state a claim upon which relief can be granted. ECF No. 17. I have reviewed the Complaint and its exhibits, the Motion, Plaintiffs' Response [ECF No. 23], and the Reply. ECF No. 25. I am fully advised and this matter is ripe for decision. For the following reasons, the Motion to Dismiss should be DENIED.

## RULE 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy

---

[2] John Mark Ossenmacher is the father of Jason John Ossenmacher. ¶13. For clarity in this Report and Recommendation, I refer to them as "John Ossenmacher" and "Jason Ossenmacher."

this Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.,* 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U.S. at

682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

## FACTS

In February 2014, John Ossenmacher – referring to himself as The Digital Trust – made a written offer to buy the Property. ¶37. "The Digital Trust" was a fictitious name registered with the Florida Secretary of State and held by Central Fund Holdings, LLC. ¶30.

Ossenmacher conducted subsequent negotiations to purchase the Property. ¶38. In March 2014, the 2014 Purchase Contract was executed; the purchase price was $8,950,000. ECF No. 1-9; ¶40. The listed buyer was "The Digital Trust or

Designee." *Id.* John Ossenmacher signed the contract for the buyer. ¶ 42. A deposit of $100,000 was paid, with the balance owed as a balloon payment due on or before June 3, 2016. *Id.* The buyer was also required to make the Property's mortgage payments. ¶41. John Ossenamcher asked the seller's real estate broker to sign an agreement not to disclose the $100,000 deposit. ¶43.

John Ossenmacher and Mellerski lived at the Property beginning in or about June 2014. ¶44. Between June 1, 2014, and March 1, 2016, CFH paid all but three of the $19,047.28 monthly mortgage payments on the Property. ¶45. Another entity affiliated with John Ossenmacher made two mortgage payments; Mellerski made the other. ¶45. By May 2016, the mortgage payments were two months in arrears. ¶49.

The 2016 Sale Contract was executed on May 27, 2016. It called for an arms-length third party to pay $12,900,000 for the Property. ECF No. 1-10. It lists "'Digital Trust' J. John Ossenmacher" as the seller. *Id.* The signature for the seller read "J. John Ossenmacher." *Id.* The contract called for the transaction to close on June 28, 2016. *Id.*

Also on May 27, 2016, John Ossenmacher told his real estate broker by email to "PLEASE KEEP, AND CAUSE TO KEEP, THIS TRANSACTION CONFIDENTIAL UNDER OUR PREVIOUS CONFIDENTIALITY AGREEMENT." The email closes with "many thanks from us both," and is signed "the Digital Trust." ¶56.

On June 1, 2016, the parties to the 2014 Purchase Contract executed a Modification and Extension, which extended the due date for the balloon payment

5

until July 18, 2016. ECF No. 1-11; ¶53. John Ossenmacher had requested the Modification and Extension agreement. ¶¶50. John Ossenmacher signed the agreement as "J. John Ossenmacher," Manager of "the Digital Trust, LLC." ¶54; ECF No. 1-11.³ The Modification and Extension allowed the 2014 Purchase Contract to "be assigned from [Digital Trust, LLC] to a third-party designee who will take title at closing." ECF No. 1-11 ¶4.

On June 3, 2016, a stipulated judgment was entered against John Ossenmacher and in favor of Plaintiffs for $3,500,000. ¶21.

On June 16, 2016, Transfer Trust, LLC was incorporated in Florida. ECF No. 1-12. The next day, "J. Ossenmacher" executed the Operating Agreement as Member of Transfer Trust, LLC. *Id.* The Operating Agreement listed the address for "J. Ossenmacher" as 102 NE 2nd Street, #261, Boca Raton, Florida. *Id.*; ¶63. In a bankruptcy filing in August 2016, John Ossenmacher swore under penalty of perjury that his address was 102 NE 2nd Street, #261, Boca Raton, Florida. ¶63; ECF No. 1-20 at 3.

On June 25, 2016, 17 Golfview Road Land Trust ("the Land Trust") was created. The sole beneficiary of the Land Trust was Transfer Trust, LLC. ECF No. 1-13. J. John Ossenmacher was also a signatory to the trust document. *Id.* The land trust agreement gave Transfer Trust, LLC, the exclusive power (1) "to direct the Trustee to deal with title to the Property," (2) "to manage, possess, use and control

---

³ The Complaint alleges in the alternative that Jason Ossenmacher signed the agreement at John Ossenmacher's direction. ¶54.

6

the Property, and (3) to receive the proceeds from any sale or disposition of the Property. *Id.* §2(b); ¶81.

On June 27, 2016, Digital Trust, LLC assigned its right under the 2014 Purchase Contract to the Land Trust. ECF No. 1-14. "J. John Ossenmacher" signed the Assignment as Manager of Digital Trust, LLC. *Id.* The signature page PDF was emailed from jossenmacher@gmail.com which is an email address associated with John Ossenmacher. ¶67.

On June 27, 2016, title to the Property was transferred to the Land Trust by warranty deed. ECF No. 1-16.

On June 28, 2016, Digital Trust, LLC assigned to the Land Trust its rights under the 2016 Sale Contract. ECF No. 1-15. The assignment was signed by J. John Ossenmacher as Manager of the Digital Trust, LLC. *Id.*

On June 28, 2016, the Land Trust deeded the Property to an LLC controlled by the arms-length purchasers. ECF No. 1-17; ¶87.

On June 29, 2016, the escrow agent received $11,598,000 as the balance owed to purchase the Property. ¶86. The net proceeds to the Land Trust were $3,447,564.13. ¶88. These funds were held in trust by the Land Trust's attorney.

On June 28, 2016, "J. John Ossenmacher" as sole member of Transfer Trust, LLC (which was the sole beneficiary of the Land Trust) executed a written Disbursement Authorization that directed the Land Trust's attorney to disburse some of the net proceeds of the sale. ¶89. ECF No. 1-18. On June 30, 2016, $75,000 was paid to OWM, LLC, and $1,350,000 was paid to Mellerski. ¶91; ECF No. 1-19.

7

On July 11, 2016, $1,957,564.13 of the sales proceeds were disbursed to Transfer Trust, LLC. ECF No. 1-19. At that point, only $250 remained in escrow for the Land Trust. *Id.*

On August 3, 2016, John Ossenmacher filed for bankruptcy. ECF No. 1-20.

The Transfer Trust is now administratively dissolved. ¶73.

## FLORIDA UNIFORM FRAUDULENT TRANSFERS ACT

Chapter 726, Florida Statutes, addresses fraudulent transfers of assets. As relevant here, it (1) defines which transactions by debtors qualify as fraudulent transfers, (2) creates remedies for creditors affected by those transfers, and (3) creates separate remedies against third parties who benefit from the transfers.

A transfer by a debtor is fraudulent if either (1) it was made with actual intent to defraud or (2) there was no reasonably equivalent value exchanged and the debtor was left with unreasonably small assets or the inability to pay its debts (a so-called "constructive fraud"):

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>   (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
>   (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>     1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>     2. Intended to incur, or believed or reasonably should have

> believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(a), (b). Alternatively, a transfer by a debtor is fraudulent if there was no reasonably equivalent value exchanged and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Fla. Stat. § 726.106(1).

In determining whether a transaction was made with actual intent to hinder, delay, or defraud any creditor of the debtor, the Court considers badges of fraud, including whether:

> (a) The transfer or obligation was to an insider.
>
> (b) The debtor retained possession or control of the property transferred after the transfer.
>
> (c) The transfer or obligation was disclosed or concealed.
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (e) The transfer was of substantially all the debtor's assets.
>
> (f) The debtor absconded.
>
> (g) The debtor removed or concealed assets.
>
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

9

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. §726.105(2).

A creditor victimized by a fraudulent transfer has remedies against both the debtor and third-party transferees. The creditor can avoid the transfer, Fla. Stat. §726.108(1)(a), can enjoin further disposition of the debtor or transferee's property, Fla. Stat. §726.108(c)(1), and (if a judgment creditor) can levy the asset transferred or its proceeds. Fla. Stat. §726.108(2). Where the fraudulent transfer is voided, the creditor can obtain a money judgment for the value of the transferred asset; that judgment can be against the "first transferee of the asset or the person for whose benefit the transfer was made; or [a]ny subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Fla. Stat. §726.109(2)(a), (b).

## THE COMPLAINT

Count 1 alleges actual fraudulent transfers. The requested remedy is to (1) set aside the Transfers, (2) enjoin all Defendants from disposing of the cash proceeds of the Transfers or any other assets, and (3) an order levying execution on John Ossenmacher's assets. ¶112, Complaint at 31-33.

Count II alleges constructive fraudulent transfers based on the debtor being left with unreasonably small assets or no ability to pay its debts, in violation of Section 726.105(1)(b). Count III alleges constructive fraudulent transfers based on the debtor's insolvency or pending insolvency, in violation of Florida Statute §

726.106(1) against all Defendants. Counts II and III ask for the same remedies as Count I. Complaint at 31-33.

Count IV seeks a money judgment under Section 726.109(2)(a) against all the Defendants for the value of fraudulently transferred assets. It theorizes (1) John Ossenmacher was the person who benefited from the Transfers, (2) the Land Trust was a mere conduit, so Mellerski is a first transferee of $1,350,000 in proceeds disbursed from the Land Trust, (3) John Ossenmacher (or in the alternative Jason Ossenmacher) is the first transferee of $1,957,564.13 disbursed from the Land Trust to Transfer Trust because Transfer Trust is the alter ego of John Ossenmacher.

Count V is an alternative to Count IV. It seeks a money judgment against all Defendants as transferees on the theory that the Land Trust was not a mere conduit and is therefore the first transferee of the sales proceeds. It alleges the Defendants were persons for whose benefit the Transfers were made (John Ossenmacher as the alter ego of Transfer Trust) or, alternatively, that they are subsequent transferees who did not receive their disbursements in good faith or for value.

## PROCEEDINGS SUPPLEMENTARY

Supplemental proceedings to enforce a federal judgment are governed by Federal Rule of Civil Procedure 69(a), which states:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a). The Complaint invokes proceedings supplementary under Florida Statutes §56.29(9). ¶1. Section 56.29(9) establishes a procedure to challenge allegedly fraudulent transfers through proceedings supplementary. It states in relevant part:

> The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure.

§ 56.29(9), Fla. Stat. Ann.

## DISCUSSION

Plaintiffs' theory is (1) the Digital Trust was an alter ego of their debtor, John Ossenmacher, so (2) the right to purchase and flip the Property belonged to the debtor, individually, and (3) the Transfers were fraudulent transfers, so (4) the profits from the sale belonged to Ossenmacher, and (5) the other Defendants are improper transferees of the proceeds of the fraudulent transfers. Put more succinctly, if the Transfers are voided, the sales proceeds belonged to Ossenmacher, who then diverted the money to the other Defendants.

*Rule 9(b)*

Defendants first incorrectly argue that the Complaint must be dismissed because it fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b) does not apply to fraudulent transfer claims under Florida law:

12

> A fraudulent transfer claim, however, is different than the fraud claims to which Rule 9(a) [sic] would normally apply. In a common-law fraud claim, the defendant is alleged to have made false statements or material omissions to the plaintiff, who is in a position to plead those statements or omissions with specificity. *See Steinberg v. A. Analyst ltd., Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *12 (S.D. Fla. Mar. 26, 2009). A fraudulent-transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. *Id*. As a result, Rule 9(b)'s heightened pleading standard does not apply to claims brought under FUFTA.

*Perlman v. Five Corners Invs. I*, No. 09-81225-CIV-HURLEY, 2010 WL 962953, at *4 (S.D. Fla. Mar. 15, 2010) (J. Hurley) (citations omitted). In any event, as discussed above, the Complaint alleges in great detail and with comprehensive exhibits the precise transactions that are alleged to be fraudulent. These allegations satisfy Rule 9(b)'s requirement that an allegation of fraud be pled with particularity.

*Alter Ego*

Defendants next argue that the Complaint does not plausibly allege that Transfer Trust and The Digital Trust were the alter egos of John Ossenmacher. ECF No. 17 at 6-7. They correctly note that many of the Complaint's alter ego allegations are based "upon information and belief," *see* ¶¶ 28-32 (Digital Trust); 71-73 (Transfer Trust), or are conclusory statements without factual support. *See* ¶¶ 33 (Digital Trust); 73 (Transfer Trust).

Plaintiffs point to several paragraphs in the Complaint as properly-pled facts to support a plausible inference of alter ego. ECF No. 23 at 9 (citing ¶¶ 28-30, 32, 38-39, 41-42, 51-53, 56-57, 62-64, 71-72, 76-77). Many of these "facts" are not entitled to the assumption of truth because they are pled "upon information and belief."

13

Nevertheless, there are sufficient well-pled facts that (viewed in the light most favorable to Plaintiffs) plausibly allege an alter ego relationship with Digital Trust. *See* ¶¶ 38, 39, 41, 42, 43, 45, 51, 53, 54, 56, 61-63, 76-77. Digital Trust was a fictitious name owned by Central Fund Holdings, LLC. ¶30. Although some of the transaction documents reference "Digital Trust, LLC," there is no allegation in the Complaint that Digital Trust had a formal legal structure (corporation, LLC, or trust). There is no allegation that Digital Trust observed entity formalities or had any existence apart from Ossenmacher, individually. There is also no allegation that Digital Trust was used for any purpose other than those related to the Property. Viewed in the proper light, these facts create an adequate inference that Digital Trust is the alter ego of John Ossenmacher.

The Complaint also plausibly alleges that the corporate form of Transfer Trust, LLC, should be disregarded and its conduct imputed to John Ossenmacher. Transfer Trust was created June 16, 2016. Nine days later, it became the sole beneficiary of the Land Trust, with full authority over the Land Trust. Three days after that, it directed the Land Trust to disburse funds to third parties. Two weeks after that, it received almost $2,000,000 in proceeds from the sale of the Property. All of these actions occurred after the stipulated judgment was entered against John Ossenmacher. Viewed in the light most favorable to Plaintiffs, the allegations in the Complaint plausibly allege that Transfer Trust LLC was created and used to perpetrate a fraud on Ossenmacher's creditors, so its corporate form should be disregarded. *See, e.g. Parrot, Inc. v. NiceStuff Distrib. Int'l, Inc.,* No. 06-61231-CIV,

14

2009 WL 10739407 (S.D. Fla. June 15, 2009) (J. Rosenbaum), *report and recommendation approved in part,* No. 06-61231-CIV, 2009 WL 10667523 (S.D. Fla. Sept. 4, 2009) (J. Dimitrouleas).

Defendants also argue that the Complaint does not plausibly allege that the Land Trust was a mere conduit. I disagree. Viewed in the light most favorable to Plaintiffs, the circumstances and timing of the Land Trust being created, the fact that Transfer Trust, LLC, exercised complete dominion and control over the corpus of the Land Trust, and the almost immediately dissipation of all but $250 of the Land Trust's assets, create a sufficient inference that it was a mere conduit. *See* ¶¶ 81-83.

*Debtor*

Defendants argue that the Complaint fails to plausibly allege that Jason Ossenmacher and Mellerski are debtors to Plaintiffs. Plaintiffs respond that they need not plausibly plead that these Defendants are debtors because Counts I-III seek remedies against them as transferees. Plaintiffs are correct. As discussed above, once a debtor engages in a fraudulent transfer, the creditor can obtain remedies against non-debtors who benefit from the transaction, including subsequent transferees. It is irrelevant whether the transferee personally participated in the underlying fraudulent transfer. I reject all of Defendants' arguments for dismissal based on the premise that the Complaint fails to plausibly allege that Jason Ossenmacher or Mellerski participated in a fraudulent transfer.

Defendants also argue that the Complaint fails to plausibly allege that the transferred assets belonged to John Ossenmacher. Plaintiffs correctly respond that

the relevant assets were the contractual rights to buy and sell the Property. On the face of the contracts, these rights belonged to Digital Trust. As discussed above, the Complaint plausibly alleges that John Ossenmacher was the alter ego of Digital Trust. So, the Complaint plausibly alleges that John Ossenmacher — the debtor — transferred assets.

Defendants next argue that Count I fails to plausibly allege fraudulent intent by the individual defendants. Only the debtor's intent is relevant. Here, the Complaint alleges ample badges of fraud that imply John Ossenmacher's fraudulent intent. *See* Fla. Stat. §726.105(2).

Defendants next argue that Count II fails to plausibly allege that John Ossenmacher's remaining assets after the Transfers were unreasonably small or that he was left unable to pay his debts. ECF No. 17 at 14. They argue that the right to purchase or sell the Property are the relevant assets; they then argue that these assets never belonged to John Ossenmacher. Because the Complaint plausibly alleges that John Ossenmacher is the alter ego of Digital Trust, this argument fails. Moreover, the Complaint alleges that John Ossenmacher was unable to pay his mortgage prior to the Transfers, that John Ossenmacher knew a multi-million- dollar judgment was about to be entered against him, and that he filed for bankruptcy shortly after the Transfers. These facts, when viewed in the light most favorable to Plaintiffs and considered with other evidence including the bankruptcy filing, are sufficient to plausibly plead a constructive fraudulent transfer.

Defendants next argue that Count IV fails to plausibly allege that John Ossenmacher was insolvent at the time of the Transfers or became insolvent because of them. John Ossenmacher argues that he did not make the Transfers — Digital Trust did — so he cannot be liable for a constructive fraudulent transfer. ECF No. 17 at 14. Once again, the Complaint plausibly alleges an alter ego relationship that undercuts this argument.

Defendants' other arguments in their pleadings are either insufficiently developed or not stated clearly enough to be addressed.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Dismiss the Complaint. ECF No. 17.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 30th day of August 2022.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE