*Execution Version*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### Case No. 9:22-CV-80380-BER

CAPITOL RECORDS, LLC; and CAPITOL
CMG, INC.,

           Plaintiffs,

    v.

JULIA MELLERSKI (a/k/a JULIA MILLER,
a/k/a J.L. MILLER, a/k/a JULIA
OSSENMACHER); JOHN MARK
OSSENMACHER; JASON JOHN
OSSENMACHER; TRANSFER TRUST, LLC;
and OWM, LLC,

           Defendants.

_____

### <u>CONSENT DECREE</u>

THIS CAUSE comes before the Honorable Bruce E. Reinhart, United States Magistrate Judge, United States District Court for the Southern District of Florida (this "<u>Court</u>"), between and among—

(a)    Capitol Records, LLC ("<u>Capitol Records</u>") and

(b)    Capitol CMG, Inc. ("<u>CCMG</u>", and together with Capitol Records, the "<u>Plaintiffs</u>"),

on the one hand, and

(c)    Julia Mellerski (a/k/a Julia Miller, a/k/a J.L. Miller, a/k/a Julia Ossenmacher) ("<u>Mellerski</u>"),

(d)    John Mark Ossenmacher ("<u>Ossenmacher Sr.</u>"),

(e)    Jason John Ossenmacher ("<u>Ossenmacher Jr.</u>"),

(f)    Transfer Trust, LLC ("<u>Transfer Trust</u>") and

(g)    OWM, LLC (a/k/a OSS Wealth Management, LLC) ("<u>OWM</u>", and collectively with Mellerski, Ossenmacher Sr., Ossenmacher Jr., and Transfer Trust, the "<u>Defendants</u>"),

on the other hand. Plaintiffs and Defendants are collectively referred to herein as the "<u>Parties</u>," or each, a "<u>Party</u>."

**ARTICLE I**
**BACKGROUND**

1.      On January 6, 2012, Capitol Records commenced a civil action against ReDigi, Inc. ("ReDigi") in the United States District Court for the Southern District of New York (the "Rendering Court"), styled *Capitol Records, LLC v. ReDigi, Inc.*, No. 12 CV 95 (RJS) (the "Copyright Litigation"). Subsequently, CCMG and another entity became plaintiffs, and Ossenmacher Sr. personally became a defendant, in the Copyright Litigation.

2.      In March 2013, the Rendering Court adjudged RiDigi and, subsequently, Ossenmacher Sr. personally, to be liable to Plaintiffs on their claims in the Copyright Litigation and, on November 2, 2015, the defendants in the Copyright Litigation filed a stipulation as to liability.

3.      On June 3, 2016, the Rendering Court entered the *Stipulated Final Judgment Subject to Reservation of Right to Appeal* (the "SDNY Judgment"), awarding Plaintiffs $3,500,000 in damages against ReDigi, Ossenmacher Sr. and another defendant in the Copyright Litigation, Larry Rudolph a/k/a Lawrence S. Rogel ("Rogel").

4.      In August 2022, the Rendering Court entered orders awarding Plaintiffs $514,355.38 in attorneys' fees against Ossenmacher Sr. and the other defendants in the Copyright Litigation, in addition to the $3.5 million judgment.

5.      The United States Court of Appeals for the Second Circuit affirmed the SDNY Judgment, and the Supreme Court of the United States subsequently denied the petition for a writ of certiorari to review the SDNY Judgment, making the SDNY Judgment final and subject to enforcement.

6.      On March 11, 2022, Plaintiffs commenced the above-captioned litigation (the "Enforcement Litigation") as a supplementary proceeding to enforce the SDNY Judgment pursuant to this Court's ancillary jurisdiction by filing the Complaint [ECF #1], which asserts claims for avoidance of fraudulent transfers and the recovery of the proceeds of such transfers pursuant to the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101 et seq. ("FUFTA"), as more fully described in the Complaint.

7.      Following a two-day mediation before Roy Kobert and several further negotiations and discussions (collectively, the "Mediation"), the Parties have agreed to settle their respective disputes in the Enforcement Litigation, including with respect to the SDNY Judgment (collectively, the "Disputes"), in accordance with the terms and conditions of that certain *Binding Settlement Term Sheet*, dated June 3, 2025 (a copy of which is attached hereto as **Exhibit A**) (the "Term Sheet" and such settlement as embodied thereby and hereby, the "Settlement").

8.      Pursuant to the Term Sheet, the Parties have agreed that the Settlement be further memorialized in a consent decree (this "Consent Decree") to be entered and enforceable by the Court. Accordingly, the Parties have jointly moved for the Court to enter this Consent Decree as a final judgment that fully and finally resolves all claims between and among them arising out of or relating to the Disputes, subject to and in accordance with the terms and conditions set forth herein. The Court has, by separate order, granted that motion.

NOW, THEREFORE, it is hereby ordered, adjudged and decreed as follows:

## ARTICLE II
## JURISDICTION AND VENUE

9.      The Court has jurisdiction ancillary to the original jurisdiction of the Rendering Court in the Copyright Litigation to hear and determine the Enforcement Action pursuant to 28 U.S.C. § 1963 and Fla. Stat. § 56.29.

10.      The Court also has jurisdiction over the Parties in that the Parties (a) have appeared in the Enforcement Action and (b) expressly consented in the Term Sheet to this Court's authority to enforce the Settlement documented by this Consent Decree.

11.      Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c)(2).

12.      The Parties have, pursuant to 28 U.S.C. § 636(c)(1), waived their right to proceed before a United States district judge and have consented to have the undersigned United States magistrate judge conduct any and all further proceedings in this civil action, including ordering the entry of final judgment.

## ARTICLE III
## GOOD FAITH

13.      The Parties agree, and the Court, by entering this Consent Decree, finds that: (a) the Parties negotiated the Settlement documented in this Consent Decree in good faith and at arms-length, as evidenced by the successful Mediation; (b) settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation by the Parties; and (c) the terms of this Consent Decree are fair and reasonable based on the circumstances.

## ARTICLE IV
## SETTLEMENT PAYMENT AND OTHER AGREEMENTS

14.      **Settlement Payment.** In consideration for the complete and final resolution of the Disputes, including, without limitation, the releases exchanged in Article V, Defendants shall pay Plaintiffs a total of $935,000 in cash in immediately available funds (the "Settlement Payment"), payable as follows:

(a)      Initial Payment. On or about June 6, 2025 (the "Initial Payment Date"), following the execution of the Term Sheet, Defendants paid Plaintiffs the sum of $600,000 (the "Initial Payment") in partial satisfaction of the Settlement Payment.

(b)      Deferred Payment. By no later than June 30, 2029 (the "Deferred Payment Maturity Date"), Defendants shall pay Plaintiffs the remaining $335,000 (the "Deferred Payment"). For the avoidance of doubt, Defendants may, but are not obligated to, pay in full or make partial payments on the Deferred Payment prior to the Deferred Payment Maturity Date, in each case with no prepayment penalty, and such payments will reduce the outstanding balance of

3

the Deferred Payment. All amounts in respect of the Deferred Payment remaining outstanding as of the Deferred Payment Maturity Date shall be automatically due and owing on such date. The date that the Deferred Payment or, if applicable, the Maximum Second-Priority Lien Recovery (as defined below) is indefeasibly received by Plaintiffs in full in cash hereunder is referred to herein as the "Deferred Payment Date."

15. **Second-Priority Lien.**

(a)     As security for Defendants' obligation to timely pay the Deferred Payment, Mellerski hereby grants UMG Recordings, Inc., for the benefit of Plaintiffs, a continuing lien and security interest (the "Second-Priority Lien") in the real property commonly described as 928 Norfolk Avenue, Park City, Summit County, Utah 84060 (the "Park City Property"). The Parties agree that the Second Priority Lien shall be junior in priority only to the mortgage lien against the Park City Property securing a mortgage in the amount of $610,000 (the "Senior Loan") in favor of NexBank (the "Senior Lender").

(b)     Mellerski shall, within two (2) business days of the Effective Date hereof, execute such documents as may be necessary to grant the Second-Priority Lien (including without limitation, the Mortgage Agreement attached hereto as **Exhibit B,** the "Second-Priority Lien Form"), which Plaintiffs may record in the public records pursuant to applicable Utah law. Plaintiffs may also record, pursuant to applicable Utah law, a request for notice of any default under the Senior Lender's mortgage and/or a request for notice of any foreclosure or similar proceedings commenced by the Senior Lender or any other third party lienholder, substantially in the form attached hereto as **Exhibit C** (the "Notice Request" and collectively with this Consent Decree, the Term Sheet, the Second-Priority Lien Form and such other documentation necessary to consummate the transactions contemplated hereby, the "Definitive Documents").

(c)     At any applicable time, the Second-Priority Lien shall be deemed to secure only the amount of the Deferred Payment then remaining outstanding. By way of example, if Defendants pay $100,000 of the Deferred Payment prior to the Deferred Payment Maturity Date, the Second-Priority Lien shall be deemed partially released to the extent of such payment and shall secure only the remaining $235,000 of the Deferred Payment. Upon timely payment of the full amount of the Deferred Payment, Plaintiffs shall release the Second-Priority Lien and record a satisfaction thereof.

(d)     Plaintiffs shall not unreasonably withhold their consent or cooperation in the event Defendants attempt to refinance the Senior Loan prior to the Deferred Payment Maturity Date so long as the validity, priority, amount and extent of the Second-Priority Lien are unaffected thereby.

16. **Default; Remedies.** Defendants' failure to pay the Deferred Payment on or before the Deferred Payment Maturity Date shall, immediately and automatically and without notice to any Party, constitute an event of default hereunder (an "Event of Default"). If an Event of Default occurs, then Plaintiffs may, in their sole and absolute discretion, (a) move this Court to enforce this Consent Decree and/or (b) commence a judicial foreclosure proceeding on the Park City Property (but not a non-judicial foreclosure) (defined herein as a "Foreclosure Proceeding"). For

the avoidance of doubt, Plaintiffs shall have no right hereunder to pursue any remedies or other actions against Defendants' property at 707 Heliotrope Ave., Corona Del Mar, CA 92625.

17. **Foreclosure Proceedings.** In any foreclosure or similar proceeding as to the Park City Property commenced by (a) Plaintiffs, (b) the Senior Lender (or any of its successors or assigns) in which any of Plaintiffs are named as parties therein or (c) any other mortgage or lienholder in which any of Plaintiffs are named as parties therein (each, a "Foreclosure Proceeding"), the following shall apply:

(a) Plaintiffs shall be entitled to recover (i) the amount of the Deferred Payment then-outstanding *plus* (ii) an additional $100,000.00 as liquidated damages *plus* (iii) the amount of any reasonable costs and fees, including attorneys' fees, incurred by Plaintiffs in connection with such Foreclosure Proceeding (clauses (i) through (iii), collectively, the "Maximum Second-Priority Lien Recovery"), which total amount (x) Plaintiffs shall provide to the escrow agent, title company or similar officer as their payoff number for inclusion on the closing statement for the sale of the Park City Property and (y) will be paid in full to Plaintiffs at closing;

(b) If a Foreclosure Proceeding is commenced by the Senior Lender or other mortgage or lienholder before the Deferred Payment Maturity Date, then the amount of the Deferred Payment then-outstanding shall be deemed accelerated and immediately and automatically become due and payable;

(c) Defendants expressly waive and agree not to assert any defenses to Plaintiffs' claims, counterclaims, cross-claims and/or arguments in any such Foreclosure Proceeding; *provided, however,* that Defendants shall retain only (i) the right to be heard on final approval of the sale solely as it relates to the value of the Park City Property and (ii) any right of redemption under applicable law; and

(d) As between Plaintiffs and Defendants, any remaining proceeds from the sale of the Park City Property following full payment to Plaintiffs of the Maximum Second-Priority Lien Recovery shall be remitted to Mellerski or as the court presiding over such Foreclosure Proceeding shall otherwise order.

18. **Rogel Recovery.** In the event that Defendants provide actionable information to Plaintiffs regarding assets of Rogel, which information Plaintiffs may or may not elect to pursue in their sole and absolute discretion, and which information directly results in Plaintiffs recovering such assets from Rogel, then 50% of any such proceeds or assets recovered by Plaintiffs from Rogel (net of any fees and reasonable, taxable costs incurred by Plaintiffs in connection with such recovery) shall be credited against the amount of the Deferred Payment remaining outstanding as the time of such recovery. For the avoidance of doubt, this provision shall become inoperative upon Plaintiffs' indefeasible receipt of the full Settlement Payment or, if applicable, the Maximum Second-Priority Lien Recovery.

19. **Stay of Collection Efforts.** So long as there has been no Event of Default and Defendants have not otherwise breached or failed to comply with the terms of the Settlement, Plaintiffs shall not pursue any collection efforts against any Defendant. For the avoidance of doubt,

such stay of collection efforts shall apply only to Defendants in this Enforcement Litigation and not to Rogel or any other third parties.

### ARTICLE V
### MUTUAL GENERAL RELEASES

20.     **Release of Ossenmacher Jr.** Effective as of the Initial Payment Date, Plaintiffs, acting on behalf of themselves, their respective agents, employees, officers, directors, shareholders, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys, hereby forever release, remise and discharge Ossenmacher Jr. and his heirs, successors and assigns (collectively, the "Ossenmacher Jr. Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Consent Decree, arising out of or relating in any way to the Disputes (collectively, the "Ossenmacher Jr. Released Claims"), but specifically excluding any claims to enforce this Consent Decree.

21.     **Covenant Not to Sue Ossenmacher Jr.** Effective as of the Initial Payment Date, Plaintiffs hereby covenant not to sue the Ossenmacher Jr. Released Parties on account of any Ossenmacher Jr. Released Claim.

22.     **Release of Ossenmacher Sr., Mellerski, Transfer Trust and OWM.** Effective as of the Deferred Payment Date, Plaintiffs, on behalf of themselves, their respective agents, employees, officers, directors, shareholders, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys, hereby forever release, remise and discharge Ossenmacher Sr., Mellerski, Transfer Trust and OWM, and each of their respective heirs, successors and assigns (collectively, the "Defendant Deferred Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Consent Decree, arising out of or relating in any way to the Disputes (collectively, the "Defendant Deferred Released Claims"), but specifically excluding any claims to enforce this Consent Decree.

23.     **Covenant Not to Sue the Defendant Deferred Released Parties.** Effective as of Deferred Payment Date, Plaintiffs hereby covenant not to sue any of the Defendant Deferred Released Parties on account of any Defendant Deferred Released Claim.

24.     **Release of Plaintiffs**. Effective as of the Effective Date of this Consent Decree, each of the Defendants, on behalf of themselves, their respective heirs, successors and assigns,

hereby forever release, remise and discharge Plaintiffs and their respective agents, employees, officers, directors, shareholders, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Plaintiff Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Consent Decree, arising out of or relating in any way to the Disputes (collectively, the "Plaintiff Released Claims"), but specifically excluding any claims to enforce this Consent Decree.

25.     **Covenant Not to Sue Plaintiffs; Waiver of Appeal**. Effective as of the Effective Date of this Consent Decree, Defendants hereby covenant not to sue any of the Plaintiff Released Parties on account of any Plaintiff Released Claim. Defendants hereby waive their right to appeal this Consent Decree.

26.     **Extent of Releases.**

(a)     Subject to the exclusions stated in Article V and in this paragraph 26, the Court finds and declares that the releases exchanged in Article V are, and that the Parties intend for them to be construed as, general releases in the broadest extent permitted by applicable state and federal law that, effective as of the times set forth above, shall fully, finally and forever settle and release any and all controversies between Plaintiffs and Defendants to the extent arising out of or relating to the Disputes, and all claims and causes of action relating thereto, whether they now exist or have previously existed, and whether or not such claims or causes of action were actually asserted in the Enforcement Litigation.

(b)     EACH OF THE RELEASING PARTIES HEREUNDER FURTHER SPECIFICALLY WAIVES ANY RIGHTS THAT IT MAY HAVE UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE (TO THE EXTENT APPLICABLE), WHICH PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND FURTHER WAIVES ANY SIMILAR RIGHTS UNDER APPLICABLE LAWS.

(c)     For the avoidance of doubt, the releases exchanged in Article V do not: (i) apply to Rogel or any other third parties except as expressly set forth herein; and (ii) release, abridge or modify any claims, causes of action, rights, defenses or remedies that Plaintiffs may have in a Foreclosure Proceeding.

**ARTICLE VI**
**REPRESENTATIONS AND WARRANTIES**

7

27.     **Generally.** The Parties warrant and represent to each other that: (a) each Party shall act in good faith to accomplish the purpose of this Consent Decree; (b) each Party has not transferred, conveyed, released, pledged, assigned or made any other disposition of the claimed rights, interests, demands, actions or causes of action, obligations, or any other matter covered by this Consent Decree; (c) each Party has not relied upon any promises, agreements, representations, statements or warranties in entering into this Consent Decree, except those that are expressly set forth herein; and (d) each Party acknowledges that he, she or it has read this Consent Decree in its entirety and that he, she or it understands and appreciates its contents and significance and hereby executes the same and makes the release provided for in this Consent Decree voluntarily and of his, her or its own free will, having first had the opportunity to consult with legal counsel.

28.     **Authority.** Each signatory to this Consent Decree warrants that he, she or it has the authority to execute this Consent Decree and to bind the persons or entities on behalf of which he, she or it signs.

29.     **Specific Representations (Mellerski).** Mellerski represents and warrants that, as of the Effective Date, she currently owns the Park City Property and that the Park City Property is encumbered only by a first-priority mortgage lien securing a mortgage in the amount of $610,000 in favor of the Senior Lender.

**ARTICLE VII**
**ENFORCEMENT**

30.     **Generally.** This Consent Decree is a judgment of the Court. A Party may file a motion or petition for civil contempt to enforce its terms or redress any alleged violations thereof.

31.     **Submission to Jurisdiction.** The Parties consent to the jurisdiction of this Court to enter orders interpreting and enforcing this Consent Decree.

32.     **Fee-Shifting.** If a Party files a motion or petition for civil contempt to enforce this Consent Decree, then in addition to any other relief to which the successful or prevailing party or parties (which, for the avoidance of doubt, shall include Plaintiffs in the event they become parties to a Foreclosure Proceeding commenced by a third party and are ultimately entitled to proceeds of such Foreclosure Proceeding) (in each case, a "Prevailing Party") is entitled, the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorneys' fees of the Prevailing Party, and all taxable court costs and expenses (even if not recoverable by law as court costs) incurred in that action, and all appellate proceedings related thereto. In the event of such a Foreclosure Proceeding, the Prevailing Party may include such fees and costs as part of the payoff amount delivered to the escrow agent, title company or similar officer and such shall be paid at the closing of the foreclosure sale of the Park City Property.

**ARTICLE VIII**
**GENERAL PROVISIONS**

33.     **Recitals Incorporated.** Each of the recitals in Article I is a substantive provision of this Consent Decree.

8

34. **Binding Effect.** This Consent Decree is and shall be binding upon: (a) the officers, directors, successors, heirs and assigns of each Party; (b) each past, present, direct or indirect parent, subsidiary, division and affiliated entity of each Party; and (c) each past or present agent, representative, member, manager, and shareholder of each Party.

35. **Fair Construction.** The Parties acknowledge that this Consent Decree is the manifestation of direct negotiation and represents the mutual and voluntary consent and understanding of each Party. As such, this Consent Decree shall be deemed to be the joint work product of the Parties without regard to the identity of the draftsperson, and any rule of construction that a document shall be interpreted or construed against the drafting Party shall not be applicable.

36. **Severability.** If any provision of this Consent Decree is determined to be invalid or unenforceable, such invalidity or unenforceability shall not affect its remaining provisions.

37. **Assignment**. No Party may assign any of its rights or obligations hereunder without the prior written consent of each other Party.

38. **Entire Agreement.** This Consent Decree, together with the Term Sheet and the other Definitive Documents to be executed, delivered, or recorded in connection herewith, constitute the entire agreement and understanding between the Parties with regard to all matters addressed herein. This Consent Decree supersedes and replaces all prior commitments, negotiations, and all agreements proposed or otherwise, if any, whether written or oral, concerning the subject matters contained in this Consent Decree. The Parties expressly acknowledge that they have not relied on any prior or contemporaneous oral or written representations or statements by another Party in connection with the subject matter of this Consent Decree, except as expressly set forth herein.

39. **No Collateral Representations.** The consideration provided herein consists of the entire consideration to which the Parties will be entitled. The Parties acknowledge that none of the Parties, their agents, attorneys, insurers, representatives, successors, assigns, heirs, beneficiaries, executors, administrators, parents, subsidiaries, affiliates, current and former directors, officers, employees and representatives (as appropriate for each Party) has made any promise, representation or warranty, expressed or implied, not expressly set forth in this Consent Decree, which has induced any Party to execute this Consent Decree.

40. **Expenses.** Except as expressly set forth herein, each Party shall bear its respective attorneys' fees and expenses incurred with respect to this Consent Decree and the consummation of the transactions contemplated by it.

41. **Modification.** This Consent Decree may only be modified by an order of this Court, countersigned by all Parties.

42. **Governing Law; Jurisdiction and Venue.** This Consent Decree, the Settlement, and the rights and obligations of the Parties hereunder (except with respect to a Foreclosure Proceeding, as described below) shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Florida without regard to conflict of law principles. All judicial proceedings brought by any Party hereto arising out of or relating to nay dispute relating to this Consent Decree shall be asserted in the Enforcement Litigation or otherwise

brought in the United States District Court for the Southern District of Florida, unless such court rejects jurisdiction in which case they shall be brought in a Florida state court within the Southern District of Florida. By executing this Consent Decree, each Party, for itself and in connection with its properties, irrevocably: (a) accepts generally and unconditionally to the exclusive jurisdiction and venue of such courts, (b) waives any defense of forum non conveniens and (c) agrees that the foregoing provisions relating to jurisdiction and venue shall be binding and enforceable to the fullest extend permissible under applicable law. Notwithstanding the foregoing, Plaintiffs must commence a Foreclosure Proceeding in a court of competent jurisdiction within the State of Utah and the substantive law of the State of Utah shall apply in such Foreclosure Proceeding.

43.     **Tax Implications.** Each Party shall be responsible for seeking their own individual tax advice and shall bear whatever tax liability he or she incurs in connection with the transactions contemplated by this Consent Decree, including, without limitation, the Settlement Payment. The Parties make no representations to each other about what tax consequences, if any, result from the transactions contemplated by this Consent Decree, including, without limitation, the Settlement Payment.

44.     **Waiver.** No waiver of any right, obligation, or duty imposed by or under this Consent Decree shall be effective unless such waiver is reflected in a writing duly executed by all Parties hereto. No waiver shall be effective based on conduct or oral statements. Waiver by any Party of any breach of this Consent Decree shall not be a waiver by such Party of any other breach of this Consent Decree.

45.     **Execution.** This Consent Decree may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument. Facsimile or PDF signatures shall be deemed to have the same effect as original signatures.

46.     **Compromise.** The Parties agree and acknowledge that this Consent Decree is the result of a compromise and a decision to settle all disputes between them relating to the Disputes. The Parties further agree that the execution of this Consent Decree shall never be construed as an admission by any Party of any liability, wrongdoing, or responsibility.

47.     **No Third-Party Beneficiaries.** This Consent Decree shall not confer any rights or remedies upon any person or entity other than the Parties and their respective successors and permitted assigns. For the avoidance of doubt, Rogel is not a Defendant Deferred Released Party.

48.     **Effective Date.** This Consent Decree is effective on the date it is entered by the Court (such date, the "Effective Date").

## ARTICLE IX
## NOTICES

49.     Any and all notices under this Consent Decree shall be in writing, and shall be transmitted by electronic mail as follows:

If to Plaintiffs:

c/o Universal Music Group
2220 Colorado Ave
Santa Monica, CA 90404
ATTN: EVP, Head of Litigation, Business
and Legal Affairs
Email: legalnotices@umusic.com

-and-

Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
Attn: Terence G. Banich and Allison E. Yager
Email: terence.banich@katten.com
       allison.yager@katten.com

If to Defendants:

c/o John Ossenmacher
Email: jossenmacher@gmail.com

-and-

Assouline & Berlowe
213 E. Sheridan Street, Suite 3
Dania Beach, FL 33004
Attn: Eric Assouline and Greg Popowitz
ena@assoulineberlowe.com
gmp@assoulineberlowe.com

## ARTICLE X
## RETENTION OF JURISDICTION

50.    The Court retains jurisdiction over the above-captioned civil action for the purpose of interpreting and enforcing the Settlement as documented by this Consent Decree.

## ARTICLE XI
## FINAL JUDGMENT

51.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among Plaintiffs and Defendants fully and finally adjudicating the Disputes.

SO ORDERED this ____ day of _____, 2025.


_____
Honorable Bruce E. Reinhart
United States Magistrate Judge
U.S. District Court for the Southern District of Florida

## PLAINTIFFS' ASSENT TO CONSENT DECREE

We, the undersigned Plaintiffs to the Consent Decree, hereby assent to its terms:

| **CAPITOL RECORDS, LLC**, as a Plaintiff | |
|---|---|
| By: *[signature]* <br> Title: Sheryl L. Gold <br> Senior Vice President <br><br> Dated: July 23, 2025 | *see attached* <br><br> [Notarization] |
| **CAPITOL CMG, INC.**, as a Plaintiff | |
| By: *[signature]* <br> Title: Sheryl L. Gold <br> Senior Vice President <br><br> Dated: July 23, 2025 | *see attached* <br><br> [Notarization] |

12

**CALIFORNIA ACKNOWLEDGMENT**                           CIVIL CODE § 1189

<table>
<tr><td>A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.</td></tr>
</table>

State of California

County of _Los Angeles_ }

On _7/23/2025_ before me, _Elizabeth Rolando, Notary Public_
　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Sheryl L. Gold_
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

ELIZABETH ROLANDO
Notary Public - California
Los Angeles County
Commission # 2479617
My Comm. Expires Feb 11, 2028

Place Notary Seal and/or Stamp Above

Signature _____
　　　　　　　Signature of Notary Public

──────────────── OPTIONAL ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer – Title(s): _____    ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General           ☐ Partner – ☐ Limited ☐ General
☐ Individual           ☐ Attorney in Fact   ☐ Individual           ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator     ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____                    ☐ Other: _____
Signer is Representing: _____        Signer is Representing: _____

©2019 National Notary Association

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _Los Angeles_

On _7/23/2025_ before me, _Elizabeth Rolando, Notary Public_
       *Date*                              *Here Insert Name and Title of the Officer*

personally appeared _Sheryl L. Gold_

_____
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ELIZABETH ROLANDO
Notary Public - California
Los Angeles County
Commission # 2479617
My Comm. Expires Feb 11, 2028

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

---

─────────────────── **OPTIONAL** ───────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual           ☐ Attorney in Fact
☐ Trustee              ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual           ☐ Attorney in Fact
☐ Trustee              ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2019 National Notary Association

*Execution Version*

## DEFENDANTS' ASSENT TO CONSENT DECREE

We, the undersigned Defendants to the Consent Decree, hereby assent to its terms:

| | |
|---|---|
| **JOHN MARK OSSENMACHER**, as a Defendant <br><br> _____ <br> [signature] <br><br> Dated: _____ | <br><br><br><br><br>[Notarization] |
| **JULIA MELLERSKI**, as a Defendant <br><br> _____ <br> [signature] <br><br> Dated: _____ | <br><br><br><br>[Notarization] |
| **JASON JOHN OSSENMACHER**, as a Defendant <br><br> _____ <br> [signature] <br><br> Dated: 8/3/2025 | **SEE ATTACHED NOTARIAL CERTIFICATE** <br><br><br>[Notarization] |
| **TRANSFER TRUST, LLC**, as a Defendant <br><br> _____ <br> [signature] <br><br> Dated: _____ | <br><br><br><br>[Notarization] |
| **OWM, LLC (a/k/a OSS WEALTH MANAGEMENT, LLC)**, as a Defendant <br><br> _____ <br> [signature] <br><br> Dated: 8/3/2025 | **SEE ATTACHED NOTARIAL CERTIFICATE** <br><br><br>[Notarization] |

Doc ase491668

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_____

Subscribed and sworn to (or affirmed) before me on this _3rd___ day of _August_____, 20_25_, by _Jason John Ossenmacher_____
_____,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

SARAH MAVER
COMM. #2387653
Notary Public - California
Orange County
My Comm. Expires Dec. 20, 2025

(Seal)                    Signature _Sarah Maver_

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_____

Subscribed and sworn to (or affirmed) before me on this _3rd___
day of __August_____, 20 25 , by _Jason John Ossenmacher_____
_____,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

SARAH MAVER
COMM. #2387653
Notary Public · California
Orange County
My Comm. Expires Dec. 20, 2025

NRO1

(Seal)                              Signature _____

## <u>DEFENDANTS' ASSENT TO CONSENT DECREE</u>

We, the undersigned Defendants to the Consent Decree, hereby assent to its terms:

| | |
|---|---|
| **JOHN MARK OSSENMACHER**, as a Defendant<br><br>_____<br>[signature]<br><br>Dated: _7-24-25_____ | [Notarization] |
| **JULIA MELLERSKI**, as a Defendant<br><br>_____<br>[signature]<br><br>Dated: | [Notarization] |
| **JASON JOHN OSSENMACHER**, as a Defendant<br><br><br><br>_____<br>[signature]<br><br>Dated: _____ | [Notarization] |
| **TRANSFER TRUST, LLC**, as a Defendant<br><br>_____<br>[signature]<br><br>Dated: | [Notarization] |

15



**CALIFORNIA ACKNOWLEDGMENT**                                          CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _Orange_ }

On _July 24, 2025_ before me, **Kimberly Meeks, Notary Public**
  *Date*                                          *Here Insert Name and Title of the Officer*

personally appeared _Julia Lee Mellerski_
                                          *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> KIMBERLY MEEKS
> Notary Public - California
> Orange County
> Commission # 2424485
> My Comm. Expires Oct 31, 2026

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

---

**OPTIONAL**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Defendants Assent to Consent Decree_

Document Date: _July 24, 2025_                              Number of Pages: _14_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____                  Signer's Name: _____
☐ Corporate Officer – Title(s): _____          ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General                ☐ Partner – ☐ Limited ☐ General
☐ Individual          ☐ Attorney in Fact        ☐ Individual          ☐ Attorney in Fact
☐ Trustee             ☐ Guardian or Conservator  ☐ Trustee             ☐ Guardian or Conservator
☐ Other: _____                        ☐ Other: _____
Signer is Representing: _____          Signer is Representing: _____

---

©2019 National Notary Association

**CALIFORNIA ACKNOWLEDGMENT**                                   CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Orange_ }

On _July 24, 2025_ before me, _Kimberly Meeks, Notary Public_,
    *Date*                          *Here Insert Name and Title of the Officer*

personally appeared _John Mark Ossenmacher_
                                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> KIMBERLY MEEKS
> Notary Public - California
> Orange County
> Commission # 2424485
> My Comm. Expires Oct 31, 2026

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                          *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

───────────────────── **OPTIONAL** ─────────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Defendants' Assent to Consent Decree_

Document Date: _July 24, 2025_        Number of Pages: _15_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual    ☐ Attorney in Fact | ☐ Individual    ☐ Attorney in Fact |
| ☐ Trustee    ☐ Guardian or Conservator | ☐ Trustee    ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2019 National Notary Association

**<u>Exhibit A to Consent Decree</u>**
**Executed Binding Settlement Term Sheet**

*Execution Version*

**Binding Settlement Term Sheet**
**June 3, 2025**

This binding term sheet (the "Term Sheet") describes the principal terms and conditions of a settlement (collectively, the "Settlement") of certain claims among (i) Capitol Records, LLC and Capitol CMG, Inc. (collectively, "Plaintiffs"), on the one hand, and (ii) Julia Mellerski ("Mellerski"), John Mark Ossenmacher ("Ossenmacher Sr."), Jason John Ossenmacher ("Ossenmacher Jr."), Transfer Trust, LLC ("Transfer Trust"), and OWM, LLC (a/k/a OSS Wealth Management, LLC) ("OWM", and collectively with Mellerski, Ossenmacher Sr., Ossenmacher Jr., and Transfer Trust, the "Defendants"). Plaintiffs and Defendants are referred to collectively herein as the "Parties" and each a "Party".

The Settlement arises from a mediation that occurred on April 4, 2025 and April 14, 2025 and subsequent negotiations between the Parties in the litigation styled *Capitol Records, LLC and Capitol CMG, Inc. v. Julia Mellerski et al.*, which is pending under Case No. 9:22-cv-80380-BER (the "Litigation") in the U.S. District Court for the Southern District of Florida (the "Court"). The Parties agree that the Settlement shall be subsequently memorialized in certain formal definitive documents described in further detail below (defined herein as the "Definitive Documents"). Nonetheless, until such time as the Definitive Documents are executed by the Parties, the Parties also agree that this Term Sheet, when fully executed, shall constitute a legally binding and fully enforceable agreement on the terms set forth herein.

**THIS TERM SHEET IS SUBJECT TO THE PROVISIONS OF RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER SIMILAR APPLICABLE STATE AND FEDERAL RULES. THE TERM SHEET HEREIN IS A SUMMARY AND DOES NOT PURPORT TO INCLUDE ALL TERMS OR RELATED DOCUMENTATION THAT WOULD NEED TO BE REQUIRED IN ANY DEFINITIVE DOCUMENTS. SUCH TERMS AND CONDITIONS WILL BE INCLUDED IN THE DEFINITIVE DOCUMENTS WHICH THE PARTIES AGREE TO NEGOTIATE AND EXECUTE FOLLOWING EXECUTION OF THIS TERM SHEET, AND WHICH DOCUMENTS SHALL NOT BE INCONSISTENT WITH THE TERMS SET FORTH HEREIN.**

<u>**Summary of Principal Terms and Conditions of Settlement**</u>

| | |
|---|---|
| **Settlement Payment** | Defendants shall pay Plaintiffs a total of $935,000 in cash (the "Settlement Payment"), pursuant to wire instructions to be provided by Plaintiffs, which amount shall be payable as follows: |
| | (a) Within two (2) business days of the full execution of this Term Sheet, Defendants shall pay Plaintiffs $600,000 in cash (the "Initial Payment") pursuant to wire instructions to be provided by Plaintiffs, and shall provide Plaintiffs with sufficient evidence of such Initial Payment in the form of a wire transfer confirmation or such other documentation acceptable to Plaintiffs; and |
| | (b) If Defendants timely make the Initial Payment (on such date, the "Initial Payment Date"), then Defendants shall pay Plaintiffs the remaining $335,000 in cash (the "Deferred Payment") by no later than June 30, 2029 (the "Deferred Payment Maturity Date"). Defendants may pay the Deferred Payment in full prior to the Deferred Payment Maturity Date, with no prepayment penalty. |
| | For the avoidance of doubt, the Defendants may make payments, in order to reduce the outstanding balance of the Deferred Payment, at any time prior to the Deferred Payment Maturity Date. All such payments will be applied to |

| | reduce the outstanding principal balance of the Deferred Payment outstanding at such time. Defendants also have the option, but not the obligation, to repay the entire outstanding balance of the Deferred Payment at any time prior to the Deferred Payment Maturity Date. All amounts remaining outstanding as of the Deferred Payment Maturity Date shall be due and owing on such date. |
|---|---|
| **Second-Priority Lien** | Mellerski hereby represents and warrants to Plaintiffs that she currently owns the real estate commonly described as 928 Norfolk Avenue, Park City, Summit County, Utah 84060 (the "Park City Property") and that the Park City Property is encumbered only by a first-priority mortgage lien securing a mortgage in the amount of $610,000 (the "Senior Loan") in favor of NexBank (the "Senior Lender"). |
| | Defendants' obligation to make the Deferred Payment shall be secured by a second-priority mortgage lien on the Park City Property (the "Second-Priority Lien"). Mellerski shall execute such documents as may be necessary to grant the Second-Priority Lien, which documents shall be an exhibit to the Consent Decree (as defined herein) and which Plaintiffs may record in the public records pursuant to applicable Utah law. Plaintiffs may also record, pursuant to applicable Utah law, a request for notice of any default under the Senior Lender's mortgage and/or a request for notice of any foreclosure or similar proceedings commenced by the Senior Lender. |
| | At any applicable time, the Second-Priority Lien shall be deemed to secure only the amount of the Deferred Payment then outstanding. By way of example, if Defendants pay $100,000 of the Deferred Payment prior to the Deferred Payment Maturity Date, the Second-Priority Lien shall be deemed partially released to the extent of such payment and shall secure only the remaining $235,000 portion of the Deferred Payment. Upon timely payment of the full amount of the Deferred Payment, Plaintiffs shall fully release the Second-Priority Lien and record a satisfaction of Mortgage. |
| | Plaintiffs will not unreasonably withhold their cooperation if Defendants attempt to refinance the Senior Loan prior to the Deferred Payment Maturity Date so long as the validity, priority, amount and extent of the Second-Priority Lien are unaffected thereby. |
| **Default** | Defendants' failure to pay the Initial Payment when due or the Deferred Payment when due is an event of default (either, a "Default"). |
| | If a Default occurs because Defendants failed to pay the Initial Payment when due, then Plaintiffs may, in their sole and absolute discretion, (i) move the Court to enter an order enforcing the Settlement or (ii) terminate the Settlement and ask the Court to set a trial date. |
| | If a Default occurs because Defendants failed to pay the Deferred Payment when due, then Plaintiffs may, in their sole and absolute discretion, (i) move the Court to enforce the Consent Decree (as defined below) and/or (ii) commence a judicial foreclosure proceeding on the Park City Property (not a non-judicial foreclosure). For the avoidance of doubt, Plaintiffs shall not pursue any remedies or other actions against Defendants' property at 707 Heliotrope, Corona Del Mar, CA. |

| | |
|---|---|
| | In any foreclosure or similar proceeding as to the Park City Property commenced by (i) Plaintiffs or (ii) the Senior Lender (or another mortgage or lienholder) in which Plaintiffs are named as parties therein (in either case, a "Foreclosure Proceeding"):<br><br>(a) Plaintiffs may recover the amount of the Deferred Payment then outstanding (and which amount shall, upon the commencement of a Foreclosure Proceeding by the Senior Lender, be accelerated and immediately and automatically become due and payable), plus an additional $100,000 as liquidated damages and the amount of any reasonable and taxable costs and fees incurred by Plaintiffs in connection therewith (the "Maximum Second-Priority Lien Recovery");<br><br>(b) Defendants will have expressly waived and shall agree not to assert any defenses to Plaintiffs' claims, counterclaims, cross-claims and arguments in a Foreclosure Proceeding (the specifics of such waiver will be stated in the Definitive Documents); *provided, however,* that Defendants shall retain the right to be heard on final approval of the sale solely as to the value of the Park City Property and shall preserve their right of redemption; and<br><br>(c) As between Plaintiffs and Defendants, any remaining proceeds from the sale of the Park City Property after full payment of the Maximum Second-Priority Lien Recovery shall be remitted to Mellerski or as the court presiding over the Foreclosure Proceeding may otherwise order. |
| **Rogel Recovery** | In the event that Defendants provide actionable information to Plaintiffs regarding assets of Lawrence S. Rogel a/k/a Larry Rudolph ("Rogel"), which information Plaintiffs may or may not elect to pursue in their sole and absolute discretion, and which information directly results in Plaintiffs recovering such assets from Rogel, then 50% of any such net proceeds or assets recovered by Plaintiffs from Rogel (i.e., net of any fees and reasonable and taxable costs incurred by Plaintiffs in connection with such recovery) shall be credited against the amount of the Settlement Payment remaining outstanding at the time of such collection. This provision shall become inoperative upon Plaintiffs' indefeasible receipt of the full Settlement Payment or, if applicable, the Maximum Second-Priority Lien Recovery. |
| **Stay of Collection Efforts** | So long as Defendants are not in Default or otherwise breached or failed to comply with the terms of the Settlement and/or the Definitive Documents, Plaintiffs shall not pursue any collection efforts against any Defendant. For the avoidance of doubt, such standstill shall apply only to the Defendants in the Litigation and not to Rogel or any other third parties. |
| **Releases** | Upon the occurrence of the Initial Payment Date, Plaintiffs shall be deemed to have released Ossenmacher Jr. from all claims in law or in equity arising out of or relating to the Litigation (but excluding any claims to enforce the Settlement) and, aside from executing the Consent Decree, Ossenmacher Jr. shall have no further obligations under the Settlement and/or the Definitive Documents following the occurrence of the Initial Payment Date. The Parties will memorialize this release in the Definitive Documents.<br><br>Plaintiffs' release of the Defendants other than Ossenmacher Jr. shall come into force only upon Plaintiffs' indefeasible receipt of the full Settlement Payment |

3

| | |
|---|---|
| | or, if applicable, the Maximum Second-Priority Lien Recovery. This release, which will be stated in the Definitive Documents, shall extend to all claims in law or in equity arising out of or relating to the Litigation (but excluding any claims to enforce the Settlement).<br><br>For the avoidance of doubt, the foregoing releases shall apply only to the Defendants in the Litigation and not to Rogel or any other third parties. |
| **Definitive Documents** | The Settlement and all agreements set forth herein shall be more fully described in a consent decree to be entered by the Court containing its terms that is consistent with the terms of this Term Sheet and acceptable in substance and form to each Party, consent to which shall not be unreasonably withheld (the "Consent Decree"). The fully executed Second-Priority Lien shall be an exhibit to the Consent Decree (together, the "Definitive Documents"). The Consent Decree will be enforceable by the Court.<br><br>The Parties shall work together in good faith and use commercially reasonable efforts to structure and implement the Settlement and the other agreements contained herein, including pursuant to such Definitive Documents.<br><br>The Parties will request that the Court allow the Consent Decree to be filed under seal pursuant to Southern District of Florida Local Rule 5.4. |
| **Term Sheet Binding; Termination** | This Term Sheet sets forth the understanding of the Parties hereto relating to the subject matter of the Settlement, and supersedes all prior agreements, proposals or understandings between the Parties hereto as to such subject matter.<br><br>Promptly upon the execution of this Term Sheet, the Parties agree to work in good faith and use reasonable best efforts to execute the Definitive Documents containing the agreements described in this Term Sheet; *provided, however,* that unless and until such Definitive Documents are executed by the Parties hereto, this Term Sheet shall constitute a binding and enforceable agreement which shall continue to apply in full force and effect.<br><br>This Term Sheet and the Definitive Documents, and all rights, obligations, and liabilities hereunder and thereunder, shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns. This Term Sheet may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument. The Parties agree that this Term Sheet may be executed via electronic signatures, and that such signatures shall have the same legal effect as hand or "wet ink" signatures. Delivery of an executed counterpart of a signature page of this Term Sheet by facsimile or other generally accepted electronic means (e.g., PDF, DocuSign) will be effective as delivery of a manually executed counterpart of this Term Sheet. |
| **Court Notification** | Upon execution by all Parties of this Term Sheet, the Parties will jointly inform the Court (a) that the Litigation has settled pursuant to the terms contained herein, (b) that the Parties' settlement will be memorialized in a Consent Decree to be entered by the Court, the executed version of which the Parties will submit in due course and (c) request that the Court vacate the trial date and all pre-trial orders. |

| Attorneys' Fees | If (a) a Party files a motion to enforce or a petition for civil contempt with respect to the Settlement or (b) Plaintiffs commence or become parties to a Foreclosure Proceeding, in addition to any other relief to which the successful or prevailing party or parties (the "Prevailing Party") is entitled, then the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorneys' fees of the Prevailing Party, court costs, and expenses incurred in that action and all appellate proceeding related thereto. |
|---|---|
| Miscellaneous Provisions | This Term Sheet and the rights and obligations of the Parties hereunder shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Florida (without regard to conflict of law principles). |
| | All judicial proceedings brought by any Party hereto arising out of or relating to any dispute related to this Term Sheet or any obligations hereunder, shall be asserted in the Litigation or otherwise brought in the United States District Court for the Southern District of Florida unless such court rejects jurisdiction, in which case they shall be brought in a Florida state court within the Southern District of Florida. By executing and delivering this term sheet, each party hereto, for itself and in connection with its properties, irrevocably: (a) accepts generally and unconditionally the exclusive jurisdiction and venue of such courts, (b) waives any defense of forum non conveniens and (c) agrees that the foregoing provisions relating to jurisdiction and venue shall be binding and enforceable to the fullest extent permissible under applicable law. |
| | Notwithstanding the foregoing, Plaintiffs must commence a Foreclosure Proceeding in a court of competent jurisdiction within the State of Utah, and the substantive law of the State of Utah shall apply in such Foreclosure Proceeding. |
| | All provisions of this Term Sheet shall be included within the Definitive Documents. |

In order to evidence support for the terms of the Agreements contemplated by this Term Sheet, each of the Parties have executed this Term Sheet as of the date listed above.

**PLAINTIFFS:**

**CAPITOL RECORDS, LLC**

By: _Sheryl Gold_
      3742EC5245E042D...
Name:   Sheryl Gold
Title:
          Senior Vice President

**CAPITOL CMG, INC.**

By: _____

Name: Sheryl Gold

Title:

Senior Vice President

6

**DEFENDANTS:**

JOHN MARK OSSENMACHER

_____

JULIA MELLERSKI

_____

JASON JOHN OSSENMACHER

_____

TRANSFER TRUST, LLC

By:_____
Name:
Title:

OWM, LLC (a/k/a OSS Wealth Management, LLC)

By:_____
Name:
Title:

**<u>DEFENDANTS</u>:**

**JOHN MARK OSSENMACHER**

_____

**JULIA MELLERSKI**

_____

**JASON JOHN OSSENMACHER**

_____

**TRANSFER TRUST, LLC**

By:_____
Name:
Title:

**OWM, LLC (a/k/a OSS Wealth Management, LLC)**

By:_____
Name: Jason Ossenmacher
Title: Owner

**<u>Exhibit B to Consent Decree</u>**
**Form of Mortgage Agreement**

(For Recorder's Office Use Only)

**MORTGAGE AGREEMENT**

by

**JULIA MELLERSKI,** as mortgagor
(Mortgagor)

in favor of

**UMG RECORDINGS, INC.,** as mortgagee
(Mortgagee)

Dated:     As of [_____], 2025
Location: 928 Norfolk Avenue
          Park City, Utah 84060
County:   Summit

PREPARED BY AND UPON
RECORDATION RETURN TO:

Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois  60661
Attention:  Terence G. Banich and Allison E. Yager
Email: terence.banich@katten.com,
allison.yager@katten.com

## MORTGAGE AGREEMENT

**THIS MORTGAGE AGREEMENT** (this "Mortgage") is made as of [_____], 2025, by **Julia Mellerski**, as mortgagor ("Mortgagor") to **UMG RECORDINGS, INC.,** as mortgagee (together with its successors and assigns, "Mortgagee"), for the benefit of itself and the other Secured Parties (as defined herein).

## Recitals

**WHEREAS**, on March 11, 2022, Mortgagee and Capitol Records, LLC and Capitol CMG, Inc. (collectively with Mortgagee, the "Secured Parties") commenced litigation entitled *Capitol Records, LLC et al. v. Julia Mellerski (a/k/a Julia Miller a/k/a J.L. Miller a/k/a Julia Ossenmacher), et al*, in the U.S. District Court for the Southern District of Florida (the "Court") under Case No. 9:22-cv-80380-BER (the "Litigation") against Mortgagor and certain other defendants named therein (collectively, the "Defendants");

**WHEREAS**, the parties in the Litigation have settled their respective disputes in accordance with the terms and conditions of that certain Binding Settlement Term Sheet dated June 3, 2025 (the "Term Sheet") and that certain Consent Decree entered by the Court on [_____], 2025 (the "Consent Decree", and such settlement as embodied by the Term Sheet and Consent Decree, the "Settlement"; capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Consent Decree);

**WHEREAS**, pursuant to the Settlement, the Defendants in the litigation agreed to, among other things, pay to the Secured Parties the amount of $335,000 (the "Deferred Payment") on or prior to June 30, 2029 (the "Deferred Payment Maturity Date");

**WHEREAS**, it is a requirement of the Settlement that Mortgagor execute and deliver this Mortgage in favor of Mortgagee, for the benefit of itself and the other Secured Parties, to secure Defendants' obligation to pay the Deferred Payment on or prior to the Deferred Payment Maturity Date; and

**WHEREAS**, it is the intention of the parties hereto that the payment, fulfillment, and performance by Defendants of their obligation to make the Deferred Payment by the Deferred Payment Maturity Date be secured by this Mortgage.

**NOW THEREFORE**, in consideration of the Settlement and the covenants, agreements, representations and warranties set forth in this Mortgage, the Binding Term Sheet and the Consent Decree, Mortgagor and Mortgagee hereby agree as follows:

1.      Grant of Mortgage. To secure the Defendants' obligation under the Settlement to make the Deferred Payment by the Deferred Payment Maturity Date, Mortgagor does hereby irrevocably mortgage, grant and pledge to Mortgagee, for the benefit of itself and the other Secured Parties and their respective successors and assigns, the following property, rights, interests and estates now owned, or hereafter acquired by Mortgagor (collectively, the "Property"): The real property commonly known as 928 Norfolk Avenue, Park City, Summit County, Utah 84060 and

2

legally described on **Exhibit A** attached hereto, along with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located thereon. Mortgagor hereby authorizes Mortgagee and its successors and assigns at any time and from time to time to record the Mortgage in the appropriate filing offices along with any continuations thereof as authorized or required by applicable law.

2.    <u>Default; Remedies</u>. Defendants' failure to pay the Deferred Payment on or before the Deferred Payment Maturity Date shall, immediately and automatically and without notice to any Party, constitute an event of default (an "<u>Event of Default</u>"). If an Event of Default occurs, then Mortgagee and/or the other Secured Parties may, in their sole and absolute discretion, (a) move the Court to enforce the Consent Decree and/or (b) commence a judicial foreclosure proceeding on the Property (but not a non-judicial foreclosure) (defined herein as a "<u>Foreclosure Proceeding</u>").

3.    <u>Foreclosure Proceeding</u>. In any foreclosure or similar proceeding as to the Property commenced by (a) Mortgagee or the other Secured Parties, (b) Nexbank (or any of its successors or assigns) ("<u>Senior Lender</u>") in which any of Mortgagee or the Secured Parties are named as parties therein or (c) any other mortgage or lienholder in which any of Secured Parties are named as parties therein (each, a "<u>Foreclosure Proceeding</u>"), the following shall apply:

    a.    Secured Parties shall be entitled to recover (i) the amount of the Deferred Payment then-outstanding *plus* (ii) an additional $100,000.00 as liquidated damages *plus* (iii) the amount of any reasonable and taxable costs and fees, including attorneys' fees, incurred by Plaintiffs in connection with such Foreclosure Proceeding (clauses (i) through (iii), collectively, the "<u>Maximum Second-Priority Lien Recovery</u>");

    b.    If a Foreclosure Proceeding is commenced by the Senior Lender or other mortgage or lienholder before the Deferred Payment Maturity Date, then the amount of the Deferred Payment then-outstanding shall be deemed accelerated and immediately and automatically become due and payable;

    c.    Mortgagor and the other Defendants expressly waive and agree not to assert any defenses to Secured Parties' claims, counterclaims, cross-claims and/or arguments in any such Foreclosure Proceeding; *provided*, *however*, that Mortgagor and the other Defendants shall retain only (i) the right to be heard on final approval of the sale solely as it relates to the value of the Property and (ii) any right of redemption under applicable law; and

    d.    As between the Secured Parties and Mortgagor, any remaining proceeds from the sale of the Property following full payment to Secured Parties of the Maximum Second-Priority Lien Recovery shall be remitted to Mortgagor or as the court presiding over such Foreclosure Proceeding shall otherwise order

4.    <u>Amount of Debt Secured</u>. Notwithstanding anything set forth in this Mortgage to the contrary, the maximum principal amount of the Deferred Payment secured by this Mortgage, at any time, shall not exceed the sum of $335,000. In the event Mortgagor or the other Defendants

3

partially pay any portion of the Deferred Payment, then the Mortgage shall be deemed to secure only the amount of the Deferred Payment then remaining outstanding.

5. <u>Release of Mortgage</u>.  Upon timely payment of the full amount of the Deferred Payment, Mortgagee shall release this Mortgage and record a satisfaction thereof.

6. <u>Incorporation of Consent Decree and Other Agreements</u>. All of the covenants, conditions and agreements contained in the Consent Decree are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. Mortgagor shall observe and perform each and every term, covenant and provision to be observed or performed by Mortgagor pursuant to the Consent Decree and Settlement and any other agreement or recorded instrument affecting or pertaining to the Property.

7. <u>Other Covenants; Representations and Warranties</u>.

   a. Mortgagor has good, marketable and insurable fee simple title to the Property, free and clear of all liens, except for the mortgage of NexBank in the amount of $610,000 (the "<u>NexBank Mortgage</u>") and those created by this Mortgage.  This Mortgage, when properly recorded in the appropriate records will create a valid, perfected second-priority mortgage lien and security interest on the Property, subject only to the NexBank Mortgage.  There are no claims for payment for taxes, utilities, work, labor or materials affecting the Property which are past due and are or may become a lien prior to, or of equal priority with, the liens created by the Consent Decree.

   b. Mortgagor shall not transfer or further encumber the Property without Mortgagee's prior written consent; *provided*, *however*, that Mortgagee shall not unreasonably withhold its consent or cooperation in the event Mortgagor attempts to refinance the NexBank Mortgage prior to the Deferred Payment Maturity Date, so long as the validity, priority, amount and extent of this Mortgage are unaffected thereby. Mortgagor shall execute and deliver to Mortgagee, prior to or contemporaneously with the effective date of any such change, any documentation reasonably required by Mortgagee to establish or maintain the validity, perfection and priority of the security interest granted herein.

8. <u>Relationship of Mortgagor and Mortgagee</u>.

   a. The relationship between Mortgagor, on the one hand, and Mortgagee and the other Secured Parties, on the other hand, is solely that of debtor and creditor, and Mortgagee and the other Secured Parties have no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Consent Decree, the Term Sheet, or this Mortgage shall be construed so as to deem the relationship between Mortgagor, on the one hand, and Mortgagee and the other Secured Parties, on the other hand, to be other than that of debtor and creditor.

   b. Creation of this Mortgage shall not be deemed to create any liability on the part of Mortgagee or the other Secured Parties for any taxes, assessments, or other

costs or expenses arising from or related to the Property, all of which shall remain the sole obligation of Mortgagor. No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Mortgagee or the other Secured Parties, nor shall it operate to make Mortgagee or the other Secured Parties responsible or liable for any waste committed on the Property by any person or entity, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property. Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession."

9. <u>Miscellaneous</u>.

   a. <u>Governing Law</u>. This Mortgage shall be governed by the substantive law of the State of Utah, and any Foreclosure Proceeding commenced by Mortgagee must be commenced in a court of competent jurisdiction within the State of Utah.

   b. <u>Amendments</u>. This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor, Mortgagee or the other Secured Parties, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

   c. <u>Successors and Assigns</u>. This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and the other Secured Parties and their respective successors and assigns forever.

   d. <u>Inapplicable Provisions</u>. If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, it shall be construed without such provision.

   e. <u>Entire Agreement</u>. The Binding Term Sheet, the Consent Decree, this Mortgage and the other Definitive Documents (as defined in the Consent Decree) constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Settlement and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto.

   f. <u>Conflict of Terms</u>. In case of any conflict between the terms of this Mortgage and the terms of the Consent Decree, the terms of the Consent Decree shall prevail.

   g. <u>Execution</u>. This Mortgage may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument. Facsimile or PDF signatures shall be deemed to have the same effect as original signatures.

h.   <u>Notices</u>. Any and all notices to be delivered hereunder shall be delivered as set forth in the Consent Decree.

i.   <u>Refinance</u>.  Pursuant to the Consent Decree, Mortgagee will not unreasonably withhold its cooperation if Mortgagor attempts to refinance the Senior Loan prior to the Deferred Payment Maturity Date so long as the validity, priority, amount and extent of the Second-Priority Lien are unaffected thereby.

**IN WITNESS WHEREOF,** this Mortgage has been executed by Mortgagor as of the day and year first above written.

**MORTGAGOR:**

By: _____

Name: Julia Mellerski

### NOTARY ACKNOWLEDGMENT

STATE OF _____                    )

                                         ) ss.

COUNTY OF _____                   )

The foregoing instrument was acknowledged before me this _____ day of _____, 2025, by Julia Mellerski, as Mortgagor.

_____

Notary Public

My commission expires:_____

Signature Page to Mortgage Agreement (Park City Property)

**AGREED AND ACKNOWLEDGED BY:**

**MORTGAGEE:**

By: _____
Name: UMG RECORDINGS, INC.
Title:

## EXHIBIT A

## LEGAL DESCRIPTION

ALL OF LOT 26, AND THE NORTH ONE-HALF OF LOT 27, BLOCK 10, SNYDER'S ADDITION TO PARK CITY, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE SUMMIT COUNT RECORDER

APN: SA-116

BEING THE SAME PROPERTY CONVEYED TO CANO HOLDINGS, LLC BY DEED FROM JULIA LEE MELLERSKI RECORDED 02/19/2017 IN DEED BOOK 2396 PAGE 1494, IN THE RECORDER'S OFFICE OF SUMMIT COUNTY, UTAH

Property commonly known as: 928 Norfolk Avenue, Park City, UT 84060

**<u>Exhibit C to Consent Decree</u>**
**Form of Notice Request**

(For Recorder's Office Use Only)

**REQUEST FOR NOTICE**

Pursuant to Utah Code Ann. § 57-1-26(1), the undersigned requests that a copy of any notice of default and a copy of notice of sale under the Deed of Trust filed for record on May 6, 2025, and recorded in Book 2858, Page 1667, Records of Summit County, Utah, executed by Julia Mellerski as mortgagor, in and NexBank as mortgagee, be mailed to:

UMG Recordings, Inc. and Universal Music Group
2220 Colorado Ave
Santa Monica, CA 90404
ATTN: EVP, Head of Litigation, Business and Legal Affairs
Email: legalnotices@umusic.com

and

Terence G. Banich
Allison E. Yager
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
terence.banich@katten.com
allison.yager@katten.com

ALL OF LOT 26, AND THE NORTH ONE-HALF OF LOT 27, BLOCK 10, SNYDER'S ADDITION TO PARK CITY, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE SUMMIT COUNT RECORDER

APN: SA-116

BEING THE SAME PROPERTY CONVEYED TO CANO HOLDINGS, LLC BY DEED FROM JULIA LEE MELLERSKI RECORDED 02/19/2017 IN DEED BOOK 2396 PAGE 1494, IN THE RECORDER'S OFFICE OF SUMMIT COUNTY, UTAH

Property commonly known as: 928 Norfolk Avenue, Park City, UT 84060

**UMG Recordings, Inc.**
By: _____
Name:
Title: